UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


GWENDOLYN A. SILVERS,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Movant,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 4:09CV1976 CDP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNITED STATES OF AMERICA,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀)

## <u>MEMORANDUM AND ORDER</u>

Movant Gwendolyn Silvers seeks to vacate, set aside, or correct her

sentence under 28 U.S.C. § 2255. Silvers was sentenced by the Honorable

Stephen N. Limbaugh, Sr. to 51 months imprisonment following her conviction by

a jury of one count of conspiracy to commit health care fraud and twelve counts of

making a false statement related to a health care benefit program. Criminal Case

No. 4:05CR 353. Her conviction and sentence were affirmed on appeal. *United*

*States v. Hayes*, 574 F.3d 560 (8th Cir. 2009).

As grounds for her § 2255 motion, Silvers raises numerous claims of

ineffective assistance of counsel and prosecutorial misconduct. She also

challenges the sufficiency of the evidence, and makes several requests for

production of evidence from the government. Her challenges to the sufficiency of

the evidence were raised on appeal and are thus barred, and her other claims are

conclusively refuted by the record. I will therefore deny the motion without a hearing, and I will also deny her requests for production of evidence. Finally, I will not grant a certificate of appealability as Silvers has not presented a substantial showing of the denial of a constitutional right.

## **Background**

On January 12, 2006, Silvers and six others were charged in a 22-count superseding indictment with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 371, 1305, 1347, and 2 (Count 1); and twelve counts of making a false statement related to a health care benefit program in violation of 18 U.S.C. §§ 1035 and 2 (Counts 2-13). Only one defendant, Jacqueline Hayes (Silvers' sister), was charged in Counts 14-22.

The superseding indictment came as a result of several agencies' investigation into three health care companies – VIP Home Services, Complete Care of America and International, and Watkins Loving Care Home Services. These companies were owned and operated by Jacqueline Hayes and several of her family members and friends, including Silvers. As part of their employment with these three companies, Silvers and others provided in-home health care services to purportedly eligible elderly and disabled clients in the St. Louis area. These services were reimbursed by Missouri Medicaid. A multi-year investigation revealed, however, that the companies and their employees, including Silvers,

were unlawfully reimbursed by Missouri Medicaid for services that were either not provided or were provided by unqualified persons.

Silvers pleaded not guilty to the superseding indictment, and, through counsel, moved to dismiss all the charges against her for lack of jurisdiction and failure to state an offense. That motion was denied by Judge Limbaugh in November of 2006, and the case was set for trial. Over the course of the next year, several defendants, including Jacqueline Hayes, pleaded guilty, and the trial was delayed several times. On January 28, 2008, the case proceeded to trial as to the only defendants who had not pleaded guilty, Silvers and Chante Hayes, Silvers' niece.

At trial, the government presented evidence that Silvers had worked in all three companies at various times from the late 1990s until around 2002. Silvers' mother, Thelma Hayes-Jacobs, testified that she started VIP Home Services in the mid-1990s in order to provide in-home health services to eligible elderly and disabled persons. Missouri Medicaid reimbursed VIP for these services pursuant to a provider agreement with VIP that Silvers had helped to prepare. Thelma and several other witnesses testified that Silvers worked in the VIP office and was in charge of paperwork, personnel, and client relations. Aides would submit their time sheets for services allegedly provided to clients to Silvers, and she would submit the claims for reimbursement from Missouri Medicaid.

There was also evidence that Silvers' sister, Jacqueline Hayes, started and owned Complete Care and Watkins in the late 1990s and early 2000s. Silvers worked at both Complete Care and Watkins at various times and had similar responsibilities as she had had at VIP, including management of employees and clients. Chante Hayes, Silvers' niece and Jacqueline's daughter, was in charge of billing at Complete Care. The government also presented evidence that all three companies were indistinguishable from each other because they largely were run by the same people, including Silvers, and had the same clients.

As part of her duties at each of three companies, Silvers was in charge of employee paperwork and training. Several witnesses testified that, with Silvers' knowledge and assistance, they submitted false claims for services that were either not performed or were ineligible for reimbursement from Missouri Medicaid. For example, Silvers' nephew, Lawrence Hayes, testified that he signed blank time sheets at Silvers' direction and was paid for this practice. Lawrence eventaully stopped signing blank time sheets, however, when Silvers told him he was getting paid too much money. Silvers' aunt, Earlean Hopson, also testified that Silvers was in charge of ensuring that employees like Earlean received certain training required by Missouri law, but that Earlean never received any training. Similarly, several other witnesses testified that Silvers had signed off on training that they had never received and for which they received credit.

In addition to this evidence, the government presented evidence of several specific fraudulent schemes in which Silvers was involved. Ruth Buchanan, who worked at VIP and Complete Care, testified that she was reimbursed for services she provided to her husband, even though she and Silvers knew this violated Missouri law. In order to claim reimbursement, Ruth used her maiden name, White, on all paperwork and time sheets she submitted into VIP. She did this at the instruction of Silvers and Thelma. When Ruth went to work at Complete Care, she filled out a work application using her maiden name after Chante instructed her to fill it out exactly as she had at VIP. Ruth also testified she sometimes forgot to use her maiden name on her time sheets, but that Silvers would tear up the time sheet and ask her to resubmit it in her maiden name. Ruth also testified that when Complete Care was being investigated by the state of Missouri, Jacqueline instructed her to use her maiden name instead of her married name when being interviewed by investigators, and that Silvers was present for this conversation.

Another scheme involved Lawrence Hayes signing off on time sheets for work done by another employee, Monica Silvers-Smith, so that Monica would not have to report the income and potentially lose her benefits. The scheme was hatched after Silvers informed Monica, who worked as an aide for VIP, that Monica could no longer receive payments in cash. Soon afterward, Monica and Lawrence, in the presence of Silvers and Earlean, agreed that Lawrence would

sign the time sheets for Monica and receive payment for her services by check. Monica and Lawrence would then cash the check, and Monica would take her cut in cash. This agreement worked for several months until Lawrence and Monica disagreed about how much cash Lawrence should receive.

Joan Robinson, a Registered Nurse who worked for all three companies, testified that she received a call in the spring of 2002 from Jacqueline, who asked Joan to submit some reports of visits with patients that Joan had not yet submitted. Joan agreed, and met Silvers in her car in a parking lot near Jacqueline's home. When Joan handed Silvers her reports, Silvers asked Joan if she would sign some additional reports. Joan refused because she had not made the visits, and Silvers told her she could copy the reports in her own handwriting and sign them. Joan still refused, and testified that certain exhibits of nursing reports the government submitted in evidence contained her forged signature and reflected visits she had never made.

The jury returned its verdict on February 5, 2008, finding Silvers guilty of all counts. A presentence report (PSR) was then prepared. The PSR determined that the Total Offense Level was 24, based on sentencing level enhancements for Silvers' supervisory role in the conspiracy and her abuse of a position of private trust. Silvers had no criminal history, so the advisory guideline range for her sentence was imprisonment of 51 to 63 months. The PSR also determined that

Missouri Medicaid had suffered a total loss of $545,713, and recommended that Silvers make restitution payments to Missouri Medicaid.

On May 29, 2008, Judge Limbaugh considered arguments at a sentencing hearing and adopted the PSR as the Court's findings of fact. Silvers was sentenced to 51 months imprisonment, or the lowest end of the advisory guidelines, to be followed by supervised release for three years. Silvers was also ordered to pay $545,713 in restitution jointly and severally with all co-defendants.

Silvers appealed her conviction and sentence, contending the district court erred by: (1) denying her motion for judgment of acquittal; (2) failing to give a more specific answer to a jury question; and (3) calculating that the total amount of loss attributable to Silvers was $545,713. The conviction and sentence were affirmed in all respects. *Hayes*, 574 F.3d at 464.

On December 1, 2009, Silvers filed timely filed a *pro se* motion to vacate, set aside, or correct her sentence under 18 U.S.C. § 2255. Since the government's response, Silvers has also filed a reply and a motion for production of documents. She raises several grounds and sub-issues, and there is considerable overlap in her arguments, making it difficult at times to decipher her arguments. As numbered in Silvers' motion, her grounds are:[1]

---

[1] I list them here in the order in which Silvers raises them, but I will consider them in my analysis as they are logically related.

1.     Counsel was ineffective for failing to appeal the two-level enhancement to Silvers' sentence for abuse of private trust and to petition for rehearing en banc.

2.     The district court erred in calculating her advisory guidelines range. In particular, Silvers challenges the district court's determination that her Total Offense Level should be raised by 14 levels based on its finding that the total amount of loss attributable to her was $545,713.

3.     Counsel was ineffective for failing to argue that the superseding indictment was barred by the applicable statute of limitations.

4.     In a similar argument to Ground 2, Silvers again challenges her sentence based on the total loss amount of $545,713, contending she should not be liable for losses caused by her employment with VIP and Watkins, because VIP was not indicted and Watkins was dismissed from the superseding indictment.

5.     The government committed misconduct in several respects, including by failing to disclose favorable evidence to her and by relying on the perjury of its witnesses to prove its guilt.

6.     The government committed misconduct by granting immunity to witnesses who testified against her, and counsel was ineffective for failing to interview these witnesses before trial.

7.     Silvers challenges the superseding indictment in several respects, contending that: (a) stricken portions of it were read to the jury; and (b) that it failed to state an offense.

8.     In a similar argument to Ground 3, Silvers contends counsel was ineffective for failing to object to evidence about her conduct while at VIP, arguing that this evidence was barred by the statute of limitations.

9.     The district court erred by denying counsel's *Batson* challenge to the government's peremptory strike of venire person 22, an African-American female.

10.     Silvers seems to challenge her conviction and sentence because the superseding indictment failed to list any overt acts by her in furtherance of the conspiracy.

11.     Rather than a specific ground for relief, Silvers' Ground 11 appears to be request for production of favorable evidence from the government.  In particular, Silvers requests the evidence from the state of Missouri's investigation into the three companies, as well as evidence about witnesses who testified at her trial, including Ruth Buchanan's marriage certificate.

Silvers has also filed a reply and a separate motion for production of favorable evidence from the government, in which she alleges counsel destroyed documents from VIP and that he failed to call four witnesses whose testimony would have exonerated her.

## **Discussion**

A.    *No Evidentiary Hearing is Required*

I will not hold an evidentiary hearing on this motion.  "A petitioner is not entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [she] is entitled to no relief."  *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted).  However, no hearing is required when the claim is inadequate on its face or the record affirmatively refutes the factual assertions upon which the claim is based.  *Id.*  As noted in more detail below, I find that Silvers' claims are either inadequate or affirmatively refuted by the records and files before me, and I conclude that no evidentiary hearing is required.

B.    *Grounds Previously Decided Adversely to Silvers on Appeal Cannot Be Relitigated Here*

"It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."  *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (internal quotation marks and citation omitted); *accord United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000); *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993).

Silvers' Grounds 2 and 4 are related and challenge Judge Limbaugh's determination of her sentence.  In Ground 2, Silvers argues that Judge Limbaugh

should not have raised her Total Offense Level by 14, because there was insufficient evidence that the total loss attributable to her was $545,713. Specifically, she contends there was no evidence at trial that she worked at Complete Care before August of 2001, and so any losses caused by her coconspirators at Complete Care from before August of 2001 should not be part of the total loss amount determination. In Ground 4, she contends the losses caused by defendants while working at Watkins and VIP should not have been included in the total loss amount, because, she claims, only Complete Care "was on trial." Throughout her motion, Silvers raises several similar claims, including that she was sentenced based on uncharged conduct, that she should not be liable for the unforeseeable acts of her coconspirators, and that the total amount of loss unlawfully included amounts repaid to the state or amounts paid for legitimate services. Finally, she contends counsel was ineffective for failing to raise these claims.

However, on appeal, counsel raised these same issues:

Finally, Silvers asserts that the district court committed procedural error by incorrectly calculating her advisory Guidelines range . . . She argues that the court clearly erred by increasing her offense level by 14 levels based on its finding that the amount of loss attributable to her was $545,713 . . . Silvers asserts that the district court's loss calculation is incorrect because the court included loss arising before August 2001, and she is not liable for any losses prior to that date because the government did not offer any evidence of her involvement in either Complete Care or Watkins Loving Care before August 2001. Similarly, she contends that $56,885.26, the amount of

overpayment from the State of Missouri to Complete Care, should not
be included because it accrued prior to August 2001.

*Hayes*, 574 F.3d 482-83.  In considering this issue, the Eighth Circuit described

the evidence Judge Limbaugh relied on in determining the total amount of loss and

Silvers' sentence:

> At the sentencing hearing, the government's witness with regard to
> the amount of loss was Federal Bureau of Investigation Special Agent
> James Appelbaum, a specialist in the investigation of health care
> fraud for 15 years . . . Agent Appelbaum identified Exhibit 322,
> which he had compiled, as a summary of Missouri Medicaid
> payments to Complete Care and Watkins Loving Care from March 5,
> 1999 to July 22, 2005, broken down by client . . . According to
> Exhibit 322, the total paid by Missouri Medicaid to Complete Care
> and Watkins during this time period was $2,735,757.98 . . .
>
> Agent Appelbaum then explained how the loss resulting from the
> health care fraud conspiracy of which Silvers was convicted was
> $545,731 . . . Agent Appelbaum explained that he: (1) "identified all
> the clients that had either received questionable services, had received
> no services, [or had received services from] aides [who] had not been
> trained properly and we identified about $1.7 million dollars," . . . (2)
> "refined that [amount] by going only to the clients where trial
> testimony was given either about that client or about individual time
> sheets [regarding that client] and we came up with a [new] total of . . .
> $977,665"; (3) "took 50 percent of that total, basically giving the
> defendants the benefits of the doubt that some services had been
> provided and came up with §488,825 [sic], paid by Missouri
> Medicaid for those clients " . . .; and (4) "added in $56,885.26 which
> was the amount of [the overpayment to Complete Care by Missouri
> Medicaid] and when we added to the $488,825, we got a total of
> $545,773 [a]s our estimated loss" . . .
>
> The district court imposed a 14-level sentence enhancement after
> finding Silvers responsible for a loss of $545,713, *see* USSG §
> 2B1.1(b)(1)(H); the court also ordered restitution in that amount.  The
> district court stated, "I determine here that this defendant was

involved in this jointly undertaken criminal activity and that all of the activities that were involved were foreseeable by her and that she is responsible for all of those acts." . . . *See* USSG § 1B1.3(a)(1)(A) (providing that relevant conduct for sentencing purposes includes "all acts and omissions committed, aided , abetted"); USSG § 1B1.3(a)(1)(B) (providing that relevant conduct for sentencing purposes includes "all reasonably foreseeable acts of other persons taken in furtherance of the jointly undertaken criminal activity"). The district court concluded, "[T]he defendant in this case is responsible for all of those losses, particularly since they were halved to avoid any concern about a precise calculation."

*Id.* at 483-84. Considering this evidence, the Eighth Circuit concluded:

that the district court properly "calculate[d] a reasonable estimate of the loss based upon a preponderance of the evidence." *United States v. Boesen*, 541 F.3d 838, 850 (8th Cir. 2008); *see United States v. Piggie*, 303 F.3d 923, 927 (8th Cir. 2002) (providing that "[t]he amount of loss need not be determined with precision") (quotation omitted)). In addition, although "[t]he conduct of others prior to the defendant joining the criminal activity does not constitute relevant conduct under the guidelines, *United States v. Onwumere*, 530 F.3d 651, 654 (8th Cir. 2008), here the government offered evidence that Silvers was involved in Complete Care prior to August 2001. Johnson testified that Silvers helped Johnson prepare the Complete Care proposal, which was dated July 15, 1999 . . . In sum, neither the district court's method of calculating the loss nor its inclusion of loss resulting from the Complete Care health care fraud conspiracy before August 2001 was clear error.

*Id.* at 484. Because Silvers seeks to re-litigate in Grounds 2 and 4 the very same challenges to her sentence that the Eighth Circuit rejected on direct appeal, these grounds must fail.

C.      *Arguments That Could Have Been Raised on Direct Appeal But were Not Are Precluded From Review in this § 2255 Proceeding Absent a Sufficient Showing to Avoid the Procedural Bar*

"A collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987) (internal citation omitted). Grounds 1, 3, and 5-11 were not raised on direct appeal. If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which she complains. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993).[2]

In her motion and related filings, Silvers argues that ineffective assistance of counsel prevented her from raising Grounds 1, 3, 6, 8, and 9 on appeal. Silvers does not present her other grounds as arising from ineffective assistance of counsel, and presents no argument or explanation of cause or prejudice as to why

---

[2]A movant can also avoid procedural default by demonstrating actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause or actual prejudice, or that he is actually innocent.") (internal quotation marks and citations omitted). Actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." *Id.* (internal quotation marks and citation omitted).

she did not raise them on appeal.  However, in the interests of justice, I will consider these grounds in the context of ineffective assistance of counsel.

Ineffective assistance of counsel may provide the "cause and prejudice" that must be shown to consider a § 2255 movant's procedurally defaulted claim.  *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005).  The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Silvers must prove two elements of the claim.  First, she "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  The court seeks to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*  Second, Silvers "must show that the deficient performance prejudiced the defense." *Id.* at 687.  This requires her to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  I need not address both prongs if Silvers makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

Here, Silvers cannot avoid the procedural default for any of her remaining grounds, because her attorney was not ineffective for failing to raise these meritless grounds on appeal. Even if Silvers' allegations of ineffective assistance of counsel were sufficient to constitute cause and prejudice to excuse her otherwise procedurally defaulted claims, Silvers cannot prevail on the merits of her claims for the reasons that follow.

D.   *Ground 1 Fails Because There Is No Evidence of Ineffective Assistance of Counsel for Failing to Appeal the Abuse-of-Trust Enhancement*

In Ground 1, Silvers contends that counsel was ineffective for failing to challenge on appeal the two-level enhancement added to her sentence for her abuse of a position of private trust. In support of this claim, Silvers points to her co-defendant, Chante Hayes, who successfully raised this issue on appeal. AS he did with Silvers, Judge Limbaugh added a two-level enhancement to Chante's sentence pursuant to USSG § 3B1.3 for her abuse of a position of trust in a manner that contributed to her offenses.[3] On appeal, however, the Eighth Circuit reversed that decision and remanded for re-sentencing after concluding there was insufficient evidence that Chante's "and Medicaid's relationship was such that it went beyond the ordinary commercial relationship which is insufficient to invoke

---

[3]USSG §3B1.3 provides for a two-level enhancement to a defendant's sentence if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense."

the abuse-of-trust enhancement." *Hayes*, 574 F.3d at 481. Silvers' attorney raised this issue at sentencing but not on appeal, and Silvers claims it was ineffective assistance of counsel to do so. I disagree.

Although the Sixth Amendment requires a criminal defendant to have a competent attorney, it does not require counsel to raise every nonfrivolous issue on appeal that the defendant requests. *Jones v. Barnes*, 463 U.S. 745, 754 (1983); *accord Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) ("Counsel is not required to raise every potential issue on appeal."). This is so because part of a competent appellate counsel's job includes "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52. Thus, when considering whether counsel was ineffective for failing to raise a particular issue, the question "is not whether counsel's choice to omit an argument on appeal was an intelligent or effective decision, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt." *Anderson*, 393 F.3d at 754 (internal citations, quotation marks, and alterations omitted).

Here, Judge Limbaugh applied the § 3B1.3 abuse-of-trust enhancement for Silvers' involvement in the conspiracy to defraud Medicaid. The record reveals that counsel objected to that enhancement at sentencing, but decided not to appeal the issue. Specifically, in an affidavit submitted by the government in opposition

to Silvers' motion, counsel avers that he considered appealing the abuse-of-trust enhancement to Silvers' sentence and discussed the issue with co-counsel for Chante Hayes. Counsel ultimately decided, however, not to appeal it. In particular, he believed any appeal of this issue would have been undermined by "documents which [Silvers] authored which were admitted at trial," including Silvers' resumes submitted for new jobs in which she referred to herself as a manager and supervisor at Complete Care. Given these admissions, counsel concluded the chance of success on this issue were minimal compared to the other issues he chose to pursue instead.

Rather than suggesting that counsel's decision to forgo an appeal of this issue was "unreasonable" or the result of his incompetence, this evidence reveals that counsel considered the issue, discussed its merits and weaknesses with co-counsel, and ultimately decided it was not worth pursuing because of the evidence against his client – including Silvers' own admissions that she managed Complete Care. *Cf. Garrett*, 78 F.3d at 1306 (counsel not ineffective for failing to raise hearsay issue on direct appeal, when there was "substantial, recent, and at least facially contrary authority from this Circuit."); *compare Ballard v. United States*, 400 F.3d 404, 408-09 (6th Cir. 2005) (counsel ineffective for failing to raise *Apprendi* issue on appeal when co-counsel successfully raised same issue in co-defendant's appeal, and there was no explanation for counsel's failure to raise it).

It is true that co-counsel decided the matter differently and was ultimately successful in challenging the abuse-of-trust enhancement in Chante Hayes' case.[4] However, I cannot conclude that this fact alone is sufficient to show that Silvers' counsel was ineffective. In determining whether counsel's performance was ineffective, I am required to evaluate counsel's conduct "in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight." *See Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir. 1996). At the time counsel decided not to raise this issue on appeal, the Eighth Circuit case law indicated that the argument might be weak. In particular, several decisions affirmed abuse-of-trust enhancements in cases with similar factual scenarios, including defendants who had managed or played a supervisory role at the company where they committed fraud.

For example, in *United States v. Baker*, the defendant was convicted for mail fraud, insurance theft, and making false statements to the government after she misused insurance premium payments from elderly clients for her own personal expenses. 200 F.3d 558, 560 (8th Cir. 2000). The evidence also revealed that defendant was the sole proprietor of the insurance business through which she

_____

[4]Importantly, however, the Eighth Circuit did not hold that, as a matter of law, Medicaid-funded home health care providers like Hayes and Silvers could never occupy positions of trust: "Rather, Hayes, as an employee of a Medicaid-funded home health care provider, *may* occupy a position of trust." *Hayes v. United States*, 574 F.3d 460, 481 (8th Cir. 2009) (emphasis in original).

defrauded her clients and that she had total control over the insurance or annuity purchases. *Id.* at 563. While recognizing that "ordinary commercial relationships do not constitute a trust relationship sufficient to invoke the § 3B1.3 enhancement," the court noted that "the issue is fact intensive because it turns on the precise relationship between the defendant and her victims . . . ." *Id.* at 564 (internal citations and quotation marks omitted); *see also United States v. Erhart*, 415 F.3d 965, 972-73 (8th Cir. 2005) (affirming enhancement when defendant, chiropractor, defrauded insurance companies with false claims, because "trust inhered in [defendant's] relationship with the insurance companies, and he abused this relationship for the specific purpose of committing fraud."); *but see United States v. Trice*, 245 F.3d 1041, 1042 (8th Cir. 2001) (reversing enhancement when defendant only falsely stated on a HUD form that he had never been convicted of a felony; defendant was not in a position of trust vis-a-vis the victim, the United States, and the relationship between defendant and the United States was nothing more than an arm's length business relationship).

Moreover, case law from outside the Eighth Circuit indicated that criminal defendants could be subject to a § 3B1.3 enhancement for abuse of trust in Medicaid fraud cases like this. *See United States v. Bolden*, 325 F.3d 471, 504-505 (8th Cir. 2003) (affirming abuse-of-trust enhancement when defendant, director of operations at a health care facility, was entrusted by Medicaid with

thousands of dollars in prospective payments that were to be used for the benefit of its Medicaid beneficiaries, and her abuse of that authority contributed significantly to the commission and concealment of the fraud scheme); *accord United States v. Hoogenboom*, 209 F.3d 665, 671 (7th Cir. 2000) ("Medical service providers occupy positions of trust with respect to private or public insurers (such as Medicare) within the meaning of guideline § 3B1.2"); *United States v. Gieger*, 190 F.3d 661, 665 (5th Cir. 1999) (affirming abuse-of-trust enhancement for defendant who submitted false claims to Medicare through her ambulance transportation company); *United States v. Wright*, 160 F.3d 905, 911 (2d Cir. 1998) (affirming abuse-of-trust enhancement when defendant, chairperson of residence for mentally retarded persons, had unsupervised discretion over the disbursement of public funds and used that discretion to make unauthorized payments to herself and conconspirator); *but see United States v. Mills*, 138 F.3d 928, 941 (11th Cir. 1998) ("And a Medicare-funded care provider, as a matter of law, does not occupy a position of trust vis-a-vis Medicare.").

Additionally, the evidence at trial revealed that Silvers had played a significant role at all three companies involved in the conspiracy, while Chante Hayes only worked at Compete Care. Specifically, the evidence revealed that Silvers: had worked in the office in a supervisory role at all three companies from the 1990s until around 2002; had helped draft the proposals for VIP and Watkins;

had been in charge of employment at all three companies, including supervision of required training that she failed to provide; had been in contact with clients; and had been involved in several specific schemes to defraud Medicaid. Indeed, the evidence of Silvers' responsibility and involvement in the conspiracy reveals that her role was so extensive that the conspiracy would probably not have been successful absent her involvment. By contrast, the evidence of co-defendant Chante Hayes' involvement revealed that she was in charge of billing Medicaid at Complete Care only. Although the Eighth Circuit concluded that the evidence of Chante Hayes' involvement in the conspiracy did not merit the abuse-of-trust enhancement, I cannot conclude that it would have done the same given the evidence of Silvers' significant involvement.

Thus, given the case law available to counsel at the time of appeal – including case law from the Eighth Circuit affirming abuse-of-trust enhancements for behavior similar to Silvers', and from other circuits affirming the enhancement in Medicaid cases like this – I cannot conclude that counsel was ineffective for failing to raise this issue on appeal. Moreover, the evidence in the record before me reveals that counsel spent time deliberating whether to raise this issue, and decided not to because of the Silvers' significant involvement in the conspiracy. Rather than suggesting incompetence or unreasonableness, counsel's decision not to appeal the issue was informed and fell within "the wide range of reasonable

professional assistance." *Anderson*, 393 F.3d at 755. As the Eighth Circuit has repeatedly stated:

> Certainly previously appointed counsel might have chosen to press this issue on appeal, and such choice would have been reasonable. It does not follow that the opposite choice – to drop the issue – was unreasonable. Law is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal . . . It is possible to criticize his choice in hindsight. Perhaps a choice to press the issue would have been better. But we are dealing, after all, with fallible human beings, and a demand for perfection . . . cannot be met.

*Garrett*, 78 F.3d at 1306 (internal citation and quotation marks omitted).

Accordingly, I cannot conclude that counsel was ineffective for failing to appeal the abuse-of-trust enhancement to Silvers' sentence, and her Ground 1 for relief must be denied.[5]

E. *Grounds 3 and 8 Fail Because There Was No Violation of the Statute of Limitations*

In Grounds 3 and 8, Silvers raises related claims – that counsel was ineffective for failing to object to the admission of evidence about VIP at her trial,

---

[5]In her motion, Silvers also asserts, in conclusory fashion, that counsel was ineffective for failing to request a re-hearing en banc, but Silvers does not explain what arguments or challenges she thinks counsel should have made in support of this motion. Even if this issue were adequately addressed, however, I would deny it. In his affidavit, counsel responds that he decided not to request such a hearing because the panel of Eighth Circuit's decision in *Hayes* was unanimous, and he did not think there was a basis for a request for re-hearing en banc. Counsel is not ineffective for failing to raise a meritless argument, and there was no basis to request a re-hearing. *See* Fed. R. App. P. 35(a) (describing a re-hearing en banc as an extraordinary procedure "not favored and ordinarily [not] ordered"); 8th Cir. R. 35A (reserving the right to assess costs on counsel for frivolous en banc re-hearing petitions). Accordingly, this claim for relief also fails.

because, she asserts, the events occurred outside the applicable statute of limitations. She also argues that counsel was ineffective for failing to move for judgment of acquittal based on this issue, or to appeal it. This argument is misplaced.

To begin with, a review of the record reveals that the offenses charged in the superseding indictment were filed within the relevant statute of limitations period. In particular, the superseding indictment was filed on January 12, 2006 and charged Silvers with one count of conspiracy under 18 U.S.C. § 371 and twelve counts of making false statements related to a health care benefit program under 18 U.S.C. § 1035. Additionally, the superseding indictment alleged that the conspiracy continued from 1999 until about 2005, and that the last overt act in furtherance of the conspiracy occurred on June 17, 2005. Counts 2-11 and 13 all alleged false statements made in 2002, and Count 12 alleged a false statement made on August 11, 2001.

The statute of limitations for a conspiracy crime is five years from the date of the last overt act alleged in the indictment. *See* 18 U.S.C. § 3282 (five-year limitations period for non-capital offenses); *United States v. Dolan*, 120 F.3d 856, 864 (8th Cir. 1997) ("In a conspiracy charge, the limitations period begins to run from the occurrence of the last overt act committed in furtherance of the conspiracy that is set forth in the indictment."). Here, the superseding indictment

alleged that the last act in furtherance of the conspiracy occurred on June 17, 2005, less than one year before the date on which the superseding indictment was filed, January 12, 2006, and well within the five-year limitations period. Accordingly, the conspiracy count did not violate the statute of limitations.

The statute of limitations for the crime of making false statements under 18 U.S.C. § 1035 is also five years. *See* 18 U.S.C. § 3282. Here, because the superseding indictment was filed on January 12, 2006, and Counts 2-13 all alleged false statements made in 2002 or on August 11, 2001, these counts were also filed within the five-year limitations period. Accordingly, the charges in the superseding indictment were not barred by the statute of limitations, and any motion to dismiss the indictment or for judgment of acquittal on that basis would have been unsuccessful.

Silvers' main argument seems to be that evidence about the conspiracy from before the five-year period – evidence from before January 12, 2001 – was inadmissible at her trial as barred by the statute of limitations. This is incorrect. It is well settled that the statute of limitations bars stale claims or charges, not evidence. *See, e.g., Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) (statute of limitations "does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." ); *see also, e.g., Black Law Enforcement Officers Ass'n v. City*

*of Akron*, 824 F.2d 475, 482-83 (6th Cir. 1987) ("The decision whether to admit evidence is based on its relevancy and probativeness, *see* Fed. R. Evid. 401 and 402, not on whether the evidence is derived from events that occurred prior to a certain time period."); *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975) ("The statute of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is timely instituted, the statute of limitations has no bearing on the admissibility of evidence."). Because this evidence was not barred by the statute of limitations, counsel was not ineffective for failing to move to exclude it, or for failing to move for a judgment of acquittal based on its admission. Silvers' Grounds 3 and 8 must be denied.

F.    *Grounds 5, 6, and 11 Fail Because There is No Evidence of Government Misconduct*

In Grounds 5, 6, and 11, Silvers raises numerous and related claims of both prosecutorial misconduct and ineffective assistance of counsel. First, she claims the government withheld favorable evidence from her, including reports from investigating state agencies, provider agreements, stay orders by state courts, and inconsistent witness testimony. Silvers also asserts that the government relied on witness perjury and inadmissible evidence to convict her, and wrongfully granted witnesses immunity in exchange for their testimony. Related to these claims, Silvers next asserts that counsel was ineffective for failing to interview witnesses she asked him to interview. In her related filings and motion to produce evidence,

Silvers adds the allegation that counsel destroyed favorable evidence from VIP and requests that the government produce the favorable evidence it allegedly withheld from her. None of these claims has any merit.

To begin with, Silvers offers no support for her claim that the government failed to disclose favorable evidence, and the rest of the evidence in the record affirmatively refutes this claim. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) (in considering § 2255 motions, I need not give any weight to a movant's conclusory allegations, self-interested characterizations, or opprobrious ephitets). In particular, the record reveals that the government provided counsel with all of its evidence, except attorney work product, including written contracts between the state and the home health care agencies; documents related to the prior state investigation and administrative proceedings; summaries of witness statements to law enforcement agents; and transcripts of the grand jury proceedings. Before trial began, defense counsel indicated to the Court that he had had sufficient time to go through this evidence and was prepared for trial. Additionally, most of this evidence was introduced at trial, and counsel cross examined witnesses extensively about it, including about their prior inconsistent statements to state investigators and before the grand jury, and about the state's provider agreements with Complete Care from 1999 and 2000. Because the record affirmatively refutes Silvers' claim that the government failed to disclose

favorable evidence, this claim of must fail.  For the same reason, I will deny Silvers' motion and requests for evidence from the government.

Silvers' claims that the government committed misconduct by relying on witness perjury and inadmissible evidence must also fail.  There is no evidence, aside from Silvers' conclusory allegations, that any witness perjured herself.  It is undisputed that some witnesses had made prior inconsistent statements before the grand jury and to investigators, but the record reveals that counsel was aware of these prior inconsistent statements and vigorously cross-examined witnesses about those statements.

Silvers next makes several related and confusing arguments about witness testimony and documentary evidence about VIP.  Specifically, she seems to argue that all of this evidence was inadmissible, because the government used it to demonstrate her involvement in the conspiracy by proving her intent and knowledge.  Construing these arguments broadly, it seems that Silvers argues both that this evidence was unlawful Rule 404(b) evidence, and also that it is insufficient to support her conviction.  Even if these claims – raised for the first time in her § 2255 motion – were not barred, they would provide no basis for relief.

To begin with, the evidence about Silvers' and her coconspirators' actions from 1999-2005 was not offered or admitted as Rule 404(b) evidence.  Instead, it

was admitted as proof of the crime charged in the superseding indictment – a conspiracy involving several individuals, including Silvers, Complete Care, and Watkins, to defraud Missouri Medicaid from 1999 to 2005.[6]  Any motion to exclude this evidence would have been futile, because it was directly relevant to the crime charged.  In particular, to prove a conspiracy under 18 U.S.C. § 371, the government "must show that the defendants knowingly entered into an agreement or reached an understanding to commit a crime, and that at least one of the defendants overtly acted in furtherance of the agreement."  *See, e.g., United States v. Sweeney*, 611 F.3d 459, 468 (8th Cir. 2010).  Here, the evidence of Silvers' involvement in several fraudulent schemes to defraud Medicaid with her coconspirators since at least 1999 – including her instructions to Ruth Buchanan to use Ruth's maiden name on time sheets, her involvement in the plan to have Lawrence sign time sheets for Monica, and her request that Joan sign nurse visit reports for visits she never made – was relevant and admissible to show her involvement in the conspiracy.  Silvers seems to argue that she cannot be found guilty of conspiracy based on the overt acts of her coconspirators, but, put simply, quite the opposite is true.  *See id.*  Accordingly, this evidence was relevant and admissible and sufficient to support Silvers' conviction.  And because this

---

[6]Although several of the coconspirators, including VIP, were not named in the superseding indictment, the government always alleged their involvement in the conspiracy, and submitted overwhelming evidence of it at trial.

evidence tended to prove that Silvers was involved in the conspiracy to defraud Medicaid since at least 1999, that she had taken several acts in furtherance of the conspiracy, and that she had assisted other coconspirators' acts in furtherance, any motion to exclude or for judgment of acquittal, or any appeal by counsel on this point, would have been futile.

Her other claims of prosecutorial misconduct are equally unavailing. Silvers takes issue with the government's grant of immunity to the witnesses who testified against her, claiming this decision violated her due process rights. This is incorrect. The record reveals that the government granted several of Silvers' unindicted coconspirators immunity from prosecution in exchange for their testimony. Additionally, the record reveals that counsel vigorously cross-examined these witnesses on their immunity, as well as their potential bias and motivation to help the government with their testimony.[7] The issue was thus presented to the jury, which was free to disregard these witnesses' statements because of their grant of immunity. In any event, the sole authority to grant immunity is given to the executive branch, not the judicial, *see* 18 U.S.C. § 6003, and courts do not review a prosecutor's immunization decisions absent a clear showing of abuse of discretion violating the due process clause. *See, e.g., United*

---

[7]Counsel's cross-examination of these witnesses also affirmatively refutes her claim that the government's grant of immunity prevented her from confronting her accusers.

*States v. Frans*, 697 F.2d 188, 191-92 (8th Cir. 1983) (defendant must make a substantial evidentiary showing that the government intended to distort the judicial fact-finding process before a court will depart from the strong tradition of deference to the prosecutorial discretion). Here, Silvers' conclusory allegations aside, the only fact she cites in support of her claim is the government's decision to grant the witnesses immunity. This is insufficient, and I will not review the government's immunization decision. *See id.*

Finally, Silvers makes several conclusory allegations against counsel with respect to these issues. In particular, she claims that counsel failed to interview witnesses who could have provided favorable testimony after she requested that he do so, and that counsel destroyed favorable evidence from VIP. None of these claims has merit.

To begin with, the transcript of the trial reveals that it was Silvers, not counsel, who was unprepared for trial. On the morning of the first day of trial, Silvers appeared with a suitcase of evidence and witness lists, demanding that counsel prepare her defense based on this evidence. This was the first time Silvers communicated these requests to counsel, and he requested leave to review it for trial. Judge Limbaugh granted that request, giving counsel one week to review this evidence and prepare Silvers' defense, but noted:

> I do not think that it is proper for a defendant to come in to court
> when a case is over two years of age and she's had counsel for over

two years to bring something in at the last minute and then claim that
she wants her counsel to utilize those materials on her behalf. She's
had ample time to do that and having failed to do that, I think she has
to take the consequences. Nonetheless, I will grant her counsel and
her some opportunity to do this late this afternoon.

Moreover, counsel avers in his affidavit that he attempted to interview several

witnesses before trial, including co-defendants, but his requests were denied

through counsel. On this record, I cannot conclude that counsel was ineffective in

any way. Indeed, if Silvers' defense was prejudiced in any way, it was the result

of her own lack of diligence in assisting counsel.

Silvers' other conclusory claims fail. In her related filings, Silvers asserts

that counsel failed to call several specific witnesses who could have provided

favorable testimony, including that she provided some training to aides as required

by Missouri Medicaid. But even if I assume that she actually requested counsel

interview these persons and counsel failed to do so, there is no evidence that his

alleged failure to do so resulted in any prejudice to her defense. In particular,

several witnesses, including Joan, testified that Silvers held several training

sessions, so this evidence was before the jury. Moreover, as discussed above,

there is more than sufficient evidence of Silvers' guilt to support her conviction.

Finally, she fails to support her allegation that counsel destroyed favorable

evidence from VIP with any probative evidence,[8] and the rest of the record refutes it.  Indeed, a transcript from a pre-trial hearing before Magistrate Judge Medler reveals that counsel had all of VIP's records and had disclosed them to the government for its own review.  Additionally, evidence from VIP was presented at trial.  Rather than supporting her accusation that counsel destroyed exculpatory evidence, the overwhelming evidence in the record of counsel's diligent and vigorous defense of Silvers at trial and on appeal refutes this claim.

G.    *Grounds 7 and 10 Fail Because The Superseding Indictment Stated An Offense*

In Grounds 7 and 10, Silvers presents several challenges to the superseding indictment, including that stricken portions of it were read to the jury, that it failed to state an offense, and that it failed to list any overt acts by her in furtherance of the conspiracy.  None of these claims gives rise to relief.

First, the record affirmatively refutes Silvers' claim that Judge Limbaugh read stricken portions of the superseding indictment to the jury.  Although Silvers is correct that the Court agreed to strike portions of paragraph 43 in which Silvers

---

[8]She does submit a letter from counsel in which he writes, "I must have your mother's written permission to destroy these files.  I need to get rid of them ASAP."  This letter does not support Silvers' claim.  To begin with, it does not contain any specific information relevant to her claims, including which files counsel is referring to, or whether these files were ever actually destroyed.  Moreover, as discussed above, the record reveals that both counsel and the government had copies of all VIP records and had reviewed them before trial.

was specifically identified, the trial transcript reveals that, consistent with that Order, Judge Limbaugh did not read the stricken portions to the jury.

Next, Silvers challenges the superseding indictment for failing to state an offense and for failing to list any overt acts by her in furtherance of the conspiracy. Both of these claims fail. The record reveals that Silvers' counsel moved to dismiss the superseding indictment before trial for this reason, but the Court denied that motion. Silvers' did not appeal the issue in her direct appeal, but co-defendant Chante Hayes did, and the Eighth Circuit rejected it. *See Hayes*, 574 F.3d at 473. The Eighth Circuit reviewed the superseding indictment and concluded it sufficiently stated an offense of conspiracy, so any appeal raising the issues Silvers seeks to assert now would have been futile. Accordingly, Silvers' Grounds 7 and 10 provide no relief.

H.  *Ground 9 Fails Because The* Batson *Challenge Was Meritless*

Similarly, Silvers asserts in Ground 9 a claim that co-defendant Chante Hayes unsuccessfully raised on appeal – that the district court erred by denying both defendants' *Batson* challenge. As described by the Eighth Circuit:

> Hayes next contends that the district court erred in denying her *Batson* challenge to the government's peremptory strike of venire person 22, an African-American female, because the government's explanation for striking her was not supported by the record . . . Hayes asserts that the district court clearly erred because the government's preferred race-neutral reason was not supported by the record. However, the voir dire transcript provides that venire person 22 expressed concern about whether everyone with information

concerning the case would testify. Therefore, we conclude that the district court did not clearly err in denying Hayes's *Batson* challenge.

*Hayes*, 574 F.3d at 473-74. Because Silvers seeks to assert in Ground 9 the very same claim that her co-defendant unsuccessfully raised on appeal, this Ground must fail. *See, e.g., Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (as a matter of law, counsel is not ineffective for failing to raise a meritless argument).

I.       *I Will Not Issue a Certificate of Appealability*

As Silvers has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 177 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).[9]

Accordingly,

**IT IS HEREBY ORDERED** that Gwendolyn A. Silvers' motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 [#1] is denied.

---

[9]On July 11, 2011, Silvers filed a motion for leave to supplement and amend her § 2255 motion. This motion raises the same claims of ineffective assistance and prosecutorial misconduct as in her initial motion, however, and so it will be denied.

**IT IS FURTHER ORDERED** that Silvers' motions to produce additional proof [#13] and for leave to supplement and amend her motion [#15] are both denied.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability, as Silvers has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October, 2011.